UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IKE WILLIAMS,

                              Plaintiff,

            -against-

MTA BUS COMPANY,

                              Defendant.

---

17cv7687 (DF)

**MEMORANDUM
AND ORDER**

**DEBRA FREEMAN, United States Magistrate Judge:**

In this action, which is before this Court on consent pursuant to 28 U.S.C. § 636(c), plaintiff Ike Williams ("Plaintiff") alleges that defendant Metropolitan Transit Authority Bus Company ("Defendant" or "MTA Bus Company") unlawfully discriminated against him on the basis of his disability, in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (the "Rehab Act"); the New York State Human Rights Law, N.Y. Exec. L. § 290, *et seq.* (the "NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, *et seq.* (the "NYCHRL").  (*See* Plaintiff's Amended Complaint, dated Dec. 18, 2017 (Dkt. 10) ("Am. Compl.") ¶ 2.)  Plaintiff seeks declaratory, injunctive, and other equitable relief, as well as compensatory damages and attorneys' fees and costs.  (*See generally id.*)

Currently before the Court are Defendant's motion for summary judgment (Dkt. 48) and Plaintiff's cross motion for summary judgment (Dkt. 44).  For the reasons set forth below, Defendant's motion is granted, and Plaintiff's cross-motion is denied.

## BACKGROUND

### A.    Factual Background[1]

#### 1.    The Parties

Plaintiff was born hard of hearing and is fully deaf in his right ear; as a result, he primarily communicates in American Sign Language ("ASL").  (Def. 56.1 Stmt. ¶ 1; Pl. 56.1 Stmt. ¶¶ 1-2.)

Plaintiff attended a high school with both hearing and deaf students, but was provided with ASL interpreters in the classroom.  (Pl. 56.1 Stmt. ¶ 6; *see also* Def. 56.1 Stmt. ¶ 3.) Plaintiff also communicated with classmates through lip-reading and written notes (*see* Def. 56.1 Stmt. ¶ 4), although how effective these forms of communication were for him is disputed by the parties.  After high school, Plaintiff attended City Technical College, for locksmith training, where he was also assisted by ASL interpreters, as well as note takers.  (Pl. 56.1 Stmt. ¶ 7; Def. 56.1 Stmt. ¶ 5.)  After graduation, Plaintiff was self-employed as a locksmith for 20 years, a job in which he communicated with customers by text, emails, and written notes.  (Def. 56.1 Stmt. ¶¶ 6-7.)  At no point has Plaintiff worked as a stockworker.  (Pl. Mem., at 17.)

Defendant is a public benefit corporation that operates bus routes in New York City; it is a subsidiary of the Metropolitan Transit Authority ("MTA") and an affiliate of the New York City Transit Authority ("NYCTA").  (Def. 56. 1 Stmt. ¶ 9.)  Pursuant to a Memorandum of

---

[1] Unless otherwise stated, the facts summarized herein are taken from the parties' statements pursuant to Local Civil Rule 56.1 (*see* Notice of MTA and MTA Bus Company's Summary Judgment Motion (With Rule 56.1 Statement), dated July 12, 2019 ("Def. 56.1 Stmt.") (Dkt. 48, at ECF 2-6 (meaning the page numbers affixed by the Court's Electronic Case Filing ("ECF") system)); Plaintiff's Counter-Statement of Material Facts Pursuant to Local Rule 56.1(b), dated Aug. 16, 2019 ("Pl. 56.1 Stmt.") (Dkt. 44-1)), the parties' responses thereto, and the evidence the parties submitted in support of their respective motions.  Unless otherwise noted, these summarized facts are undisputed.

Understanding between Defendant and the NYCTA, the Exam Unit in NYCTA's human resources department develops and administers open examinations for Defendant's employment opportunities.  (*Id.* ¶¶ 10, 12; Declaration of Gabriella Palencia in Support o[f] Defendant's Summary Judgment Motion, dated July 12, 2019 ("Palencia Decl.") (Dkt. 48-2), Ex. F (Memorandum of Understanding between NYCT and MTA, dated Jan. 31, 2006), at MTA Bus 000071-000078.)  All of Defendant's employment practices are governed by New York Civil Service Law and the regulations of the Department of Citywide Administrative Services ("DCAS").  (Def. 56.1 Stmt. ¶ 11; Palencia Decl., Ex. L (Memorandum of Understanding between DCAS and NYTCA, dated May 2, 2011), at MTA BUS 0000029-0000043.)

### 2.   The Assistant Stockworker Position

As part of its operations, Defendant employs individuals as Assistant Stockworkers, whose duties include, *inter alia,* supervision, receipt, storage and distribution of materials and supplies at Defendant's storerooms and facilities.  (Palencia Decl., Ex. D (Notice of Examination for Exam No. 6302), at MTA BUS 000003.)  To qualify for the Assistant Stockworker position, a candidate must have:

(1)   Three years of full-time experience as a stock assistant, stock clerk, or stock worker in an industrial, manufacturing, or wholesaling business which stocks railroad, automotive, machine, aircraft or marine maintenance tools, production parts, or plumbing, hardware or sheet metal supplies and tools; or

(2)   Two years of full-time experience as described in #1 above and a four-year high school diploma or its educational equivalent; or

(3)   A satisfactory equivalent of education and experience.

(Def. 56.1 Stmt. ¶ 21; Palencia Decl., Ex. D, at MTA BUS 000004.)

Additionally, before Defendant will determine that a candidate is eligible for an Assistant Stockworker position, the candidate must take and pass an examination.  (Palencia Decl., Ex. D, at MTA BUS 000005-000006.)  If a candidate passes the examination, NYCTA will then ensure that the candidate meets the education and experience requirements, and administer an interview when a position becomes available.  (*Id.*)  The examination required for the Assistant Stockworker position, Examination No. 6302, is a knowledge-based written multiple-choice exam that tests the applicant's knowledge regarding, *inter alia,* storeroom receiving, storage and distribution receivers, tools, and other related areas.  (Pl. 56.1 Stmt. ¶ 38.)  Typically, examinees receive oral instructions prior to the administration of the exam.  (*See* Def. 56.1 Stmt. ¶ 27.)  The exam was not developed to test English literacy, reading levels, or writing capability.  (Pl. 56.1 Stmt. ¶¶ 38-41.)  Pursuant to DCAS regulations, though, exam candidates "must be able to understand and be understood in English."  (Def. 56.1 ¶ 14; Palencia Decl., Ex. J ("City of New York [DCAS] General Examination Regulations"), at DCAS000048 ¶ E.9.1.)

### 3.      Plaintiff's Application and Examination

On or about January 23, 2016, Plaintiff applied for the Assistant Stockworker position. Plaintiff testified that he initially wanted to apply to be a locksmith at the MTA, but, when a locksmith position was not available, he decided to apply for the Assistant Stockworker position to "get [his] foot in the door."  (Palencia Decl., Ex. B (Transcript of deposition of Ike Williams, conducted Mar. 15, 2019 ("Pl. Dep."), at 24.)  In connection with his application, Plaintiff

submitted his resume, which stated, *inter alia,* that Plaintiff was able to communicate in both ASL and English.  (Def. 56.1 Stmt. ¶ 20; Palencia Decl., Ex. E.)

On his application form, Plaintiff checked the box marked "Accommodation for Disability."  (Pl. 56.1 Stmt. ¶ 8.)  Plaintiff testified that a friend assisted him when filling out the application form by reading the application, translating it into ASL, and helping Plaintiff write his responses in English.  (Pl. Dep., at 23-24, 44.)

After receiving a letter dated June 1, 2016, assigning him the date of June 26, 2016 for an examination (*see* Palencia Decl., Ex. G (Williams Exam Admissions Letter, dated June 1, 2016), at MTA BUS 0000028), Plaintiff communicated with Jennifer Garcia ("Garcia"), an Associate Staff Analyst at NYCTA, to request an ASL interpreter for the exam.  (Pl. 56.1 Stmt. ¶ 13.)[2] Plaintiff testified at his deposition that, during this conversation, he informed Garcia that he needed an interpreter for the exam, "for people talking."  (Pl. Dep., at 26-27.)  Plaintiff was instructed to go to the exam unit in person to discuss his accommodations.  (*Id.*)

Plaintiff then went to the exam unit and communicated with Garcia in person, to ensure that an ASL interpreter would be provided for the examination.  (Pl. 56.1 Stmt. ¶ 14; Def. 56.1 Stmt. ¶ 24.)  While at the exam unit, Plaintiff wrote notes to communicate with the employees. (*Id.* ¶ 15.)  Garcia testified that Plaintiff lip read, but the extent to which Plaintiff understood Garcia's spoken English is unclear.  (Def. 56.1 Stmt. ¶ 25; Plaintiff's Response to Defendant's Statement of Material Facts Pursuant to Local Rule 56.1(b), dated Aug. 16, 2019 ("Pl. 56.1 Counterstatement") (Dkt. 44-2) ¶ 25.)  Plaintiff wrote a note that stated, "I am hard of hearing

---

[2] The parties dispute whether Plaintiff communicated with Garcia by videophone or by some other means.  (*See* Pl. 56.1 Stmt. ¶ 13; Defendant's Counter-Statement of Material Facts Pursuant to Local Rule 56.1(b), dated Sept. 6, 2019 ("Def. 56.1 Counterstatement") (Dkt. 48-22) ¶ 13.)

(deaf).  I want to know can I need to get application for sign language interpreter please."
(Pl. 56.1 Stmt. ¶ 15; Declaration of Jennifer Karnes in Support of Cross-Motion for Summary
Judgment, dated Aug. 16, 2019 ("Karnes Decl.") (Dkt. 45), Ex. I (Note), at PLA000002.)
Plaintiff testified that, when Garcia spoke to him, he gestured that she needed to write for him, in
order for him to understand.  (Pl. Dep., at 26-27.)  Garcia explained to Plaintiff that Defendant
did not provide ASL interpreters for exams, but that they would offer the oral instructions in
writing.  (Def. 56.1 Stmt. ¶ 17; Def. 56.1 Counterstatement ¶ 21.)  Garcia gave Plaintiff her
email address and asked Plaintiff to email her.  (Def. 56.1 Stmt. ¶ 28.)

Plaintiff emailed Garcia on June 13, 2016 stating, "Do you remember me Ike Williams
I am Hard of Hearing (DEAF), I was meet you on table talk about Test and Sign language
interpreter last week . . . ."  (Def. 56.1 Counterstatement ¶ 20; Palencia Decl., Ex. I (Emails
between Williams and Garcia), at MTA BUS 000025.)  Garcia responded on June 14, 2016 and
provided Plaintiff with a new test date of July 1, 2016.  (Palencia Decl. Ex. I, at MTA BUS
000025.)  Plaintiff replied, ". . . I will see you July 1, 2016 at 8 45 AM arrive.  Thank you for
help me."  (*Id.,* at MTA BUS 000024.)  He then followed up with a second email, asking, "I
want to know Application will planing [sic] Sign language interpreter July 1, 2016 right?"  (*Id.,*
at MTA BUS 000023.)  Thereafter, Garcia responded that NYCTA did not offer sign language
services and that the oral instructions would be provided in writing.  (*Id.*)  Plaintiff replied, "Oh
ok Sure mmm I will try do it the best writing."  (*Id.*)  Plaintiff testified at his deposition,
however, that he became "extremely nervous and thrown off" when he learned that he had to
take the exam without an ASL interpreter.  (Pl. Dep., at 21.)

On July 1, 2016, Plaintiff proceeded to take the examination without an ASL interpreter,
and he failed the exam; specifically, a passing score would have been 70 or higher, and Plaintiff

received a score of 37.50.  (Def. 56.1 Stmt. ¶ 36; *see also* Palencia Decl. Ex. P (Williams

Examination Scores, dated July 21, 2016), at MTA BUS 000027.)

### B.   **Procedural History**

On October 6, 2017, Plaintiff filed a Complaint in this Court, asserting that Defendant

had unlawfully discriminated against him on the basis of his disability, thereby violating the

Rehab Act, the NYSHRL, and the NYCHRL (Dkt. 1), and, on December 18, 2017, he filed an

Amended Complaint, asserting claims under the same three statutes (Am. Compl.).  Defendant

answered the Amended Complaint on May 1, 2018, denying Plaintiff's allegations.  (Dkt. 25.)

The parties then proceeded with discovery, which closed on April 9, 2019.  (Dkt. 35.)  After

granting two extensions at the parties' requests, the Court set a deadline of July 12, 2019 for

Defendant to file a summary judgment motion, and August 16, 2019 for Plaintiff to file a cross-

motion.  (Dkt. 41.)

Defendant served its motion for summary judgment and supporting papers on Plaintiff on

July 12, 2019.[3]  (*See generally* Notice of MTA and MTS Bus Company's Summary Judgment

Motion (With Rule 56.1 Statement), dated July 12, 2019 (Dkt. 48, at ECF 1); Def. 56.1 Stmt.;

Defendant MTA Bus Company's Memorandum of Law in Support of Its Summary Judgment

Motion, dated July 12, 2019 ("Def. Mem.") (Dkt. 48-1); Palencia Decl. and exhibits attached

thereto.)  Defendant argues in support of its motion that (1) Plaintiff was not qualified for the

Assistant Stockworker position; and (2) Plaintiff was provided with a reasonable accommodation

---

[3] Although Defendant served its motion and supporting papers on Plaintiff on that date,
2019, it failed to file those papers on the Docket until September 6, 2019 (*see* Letter to the Court
from Gabriella Palencia, Esq., dated Sept. 23, 2019 (Dkt. 51)), mistakenly assuming that its
moving papers should only be filed once the motion was fully briefed (*see id.*).  As Plaintiff
timely received the motion, however, and thus suffered no prejudice from the late filing (*see* Pl.
Reply at n.1), the Court will treat Defendant's motion as timely filed.

by being given the oral instructions for the exam in writing.  (Def. Mem., at 5-10.)  Thus, Defendant argues, Plaintiff cannot establish a claim for disability discrimination as a matter of law.  (*Id.*)

On August 16, 2019, Plaintiff opposed Defendant's motion and cross-moved for summary judgment in his favor.  (Plaintiff Ike Williams' Notice of Cross-Motion for Summary Judgment, dated Aug. 16, 2019 (Dkt. 44); Pl. 56.1 Stmt.; Pl. 56.1 Counterstatement; Memorandum of Law in Support of Plaintiff's Cross-Motion for Summary Judgment and In Opposition to Defendant's Motion for Summary Judgment, dated Aug. 16, 2019 ("Pl. Mem.") (Dkt. 46); Karnes Decl. and exhibits attached thereto.)  In his cross-motion, Plaintiff argues (1) that the requirement that Assistant Stockworkers "understand and be understood in English" improperly "screens out" deaf individuals (Pl. Mem., at 10-14); (2) that Plaintiff was qualified both to take the examination and to perform the Assistant Stockworker position (*id.,* at 14-19); (3) that the accommodation provided by Defendant of written instructions was not reasonable, whereas the accommodation requested by Plaintiff of an ASL interpreter was reasonable and would not have altered the nature of the exam (*id.,* at 19-28); (4) that Defendant failed to engage in the interactive process with Plaintiff (*id.* at 28-29); and (5) that Defendant's policy of administering exams only in English has a "disparate impact" on deaf individuals (Pl. Mem., at 29-30).

On September 6, 2019, Defendant filed its reply and opposition to Plaintiff's cross-motion.  (*See* Defendant's Reply Memorandum of Law in Support of Motion for Summary Judgment, dated Sept. 6, 2019 ("Def. Reply") (Dkt. 48-23).)  Defendant therein argues (1) that Plaintiff's briefing fails to raise a genuine dispute of fact either that he was qualified for the Assistant Stockworker position or that he was not provided with a reasonable accommodation

(*id.,* at 2-6); and (2) that Plaintiff is not entitled to raise a disparate-impact theory at this stage, as it was never alleged in Plaintiff's Amended Complaint (*id.,* at 6-7).

On September 20, 2019, Plaintiff filed his own reply in further support of his cross-motion (*see* Reply Memorandum of Law in Support of Plaintiff's Cross-Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment, undated (filed Sept. 20, 2019) ("Pl. Reply") (Dkt. 50)), in which he argues that there is no genuine dispute that Plaintiff was qualified for the position and that the accommodation provided by Defendants was not reasonable given Plaintiff's lack of proficiency with the English language. (*Id.*)

## DISCUSSION

I.  ## APPLICABLE LEGAL STANDARDS

  A.  ### Summary Judgment Standards

    1.  #### Rule 56

Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 128 (2d Cir. 1996). The moving party bears the burden of showing that no genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). This burden may be satisfied "by pointing out the absence of evidence to support the non-movant's claims." *Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 710 (2d Cir. 1991) (citing *Celotex*, 477 U.S. at 325). Where the party opposing summary judgment "fails to properly address [the moving] party's

assertion of fact . . ., the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

While a party opposing summary judgment must generally "come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment," *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 322-23), summary judgment may not be granted on default, *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004).  "[T]he district court may not grant [a] motion [for summary judgment] without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001).  If that burden is not met, summary judgment must be denied, "even if no opposing evidentiary matter is presented." *Id.* (emphasis removed) (internal quotation marks and citation omitted).

In reviewing the evidentiary record, the court "must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his [or her] favor." *L.B. Foster Co. v. Am. Piles, Inc*., 138 F.3d 81, 87 (2d Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)); *Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001).  If, even when viewed in this light, there is not "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," or if the "evidence is not significantly probative," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

### 2.      Local Civil Rule 56.1

Under this Court's rules, a party moving for summary judgment must submit "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the

moving party contends there is no genuine issue to be tried," Local Civ. R. 56.1(a), and the opposing party must submit a correspondingly numbered statement in response, additionally setting out, if necessary, material facts showing genuine triable issues, *see* Local Civ. R. 56.1(b). Each numbered paragraph in the statement of material facts served by the moving party will be deemed admitted "unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."  Local Civ. R. 56.1(c).  "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001).  Local Rule 56.1, though, does not relieve the party seeking summary judgment of the burden of establishing that it is entitled to judgment as a matter of law.  *Id.*  Thus, the Court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement; it also must be satisfied that the moving party's assertions are supported by the record.  *See Vt. Teddy Bear Co.*, 373 F.3d at 244; *see also Zerafa v. Montefiore Hosp. Hous. Co*., 403 F. Supp. 2d 320, 329 n.12 (S.D.N.Y. 2005).

### B.      Disability Discrimination

Pursuant to Section 504 of the Rehab Act, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

Claims of employment discrimination under the Rehab Act – as well as such claims brought under the NYSHRL and the NYCHRL – are generally analyzed using the same standards that govern employment-discrimination claims under the Americans with Disabilities

Act, 42 U.S.C. § 12201 *et seq.* (the "ADA"), and are analyzed using the burden-shifting

framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S.

792 (1973).  *See Atencio v. United States Postal Serv.,* 198 F. Supp. 3d 340, 355 (S.D.N.Y.

2016); *see also* 29 U.S.C. § 794(d).

To establish a *prima facie* case of disability discrimination in employment under the

Rehab Act, a plaintiff must demonstrate that (1) he or she is disabled under the Act, (2) he or she

was "'otherwise qualified' for the position" sought, (3) he or she was "excluded from the

position solely because of [his or her disability]," and (4) "the program sponsoring the position

received federal funding."  *Fink v. New York City Dep't of Pers.*, 855 F. Supp. 68, 71 (S.D.N.Y.

1994), *aff'd,* 53 F.3d 565 (2d Cir. 1995).  More specifically, where a Rehab Act claim for

employment discrimination turns on an alleged failure to provide a reasonable accommodation, a

plaintiff must demonstrate that (1) he or she is disabled; (2) the employer was on notice of his or

her disability; (3) "with reasonable accommodation, plaintiff could perform the essential

functions of the job at issue"; and (4) the employer has refused to provide a reasonable

accommodation.  *Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019) (citing

*McBride v. BIC Consumer Prods. Mfg. Co.,* 583 F.3d 92, 97 (2d Cir. 2009)).  The same *prima*

*facie* requirements apply to claims of failure to accommodate brought pursuant to the NYSHRL

or NYCHRL.  *Berger v. New York City Police Dep't,* 304 F. Supp. 3d 360, 369 (S.D.N.Y. 2018).

The NYSHRL is interpreted coextensively with the Rehab Act, *Loeffler v. Staten Island*

*Univ. Hosp.,* 582 F.3d 268, 277 (2d Cir. 2009), and, although it has been held that "claims under

the [NYCHRL] must be given 'an independent liberal construction,'" *id.* at 278, courts in this

Circuit have nonetheless continued to apply the *McDonnell Douglas* burden-shifting framework

to claims under the NYCHRL, *see, e.g.*, *LeBlanc v. United Parcel Serv.,* No. 11cv6983 (KPF), 2014 WL 1407706, at *12 (S.D.N.Y. Apr. 11, 2014).[4]

II.    **THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT**

As the arguments made by the parties in their cross-motions generally relate to both motions, the Court will address them together.

A.    **The English Language Requirement for the Assistant**
        **Stockworker Position Was Not a *Per Se* Violation of the Rehab Act.**

First, the Court rejects Plaintiff's argument, raised in his cross-motion, that Defendant's application of DCAS regulations, requiring that Assistant Stockworkers be able to understand and be understood in English, improperly "screens out" deaf applicants, and essentially constitutes *per se* disability discrimination.  (Pl. Mem., at 10-14.)  Although it is true that employers may not implement standards that "screen[] out or tend[] to screen out" disabled persons, 10 C.F.R. § 4.124(a), Plaintiff does not point to any evidence, other than Plaintiff's own experience, or to any authority (except, at most, one other case that is currently pending in this District, *Frilando v. Metropolitan Transit Authority,* No. 18cv5204 (LGS) (S.D.N.Y.), which involves a deaf applicant who applied for a position with the MTA, and who, like Plaintiff in this case, failed a DCAS examination after not having been provided with an ASL interpreter) (*see generally* Pl. Mem.), which could lead this Court to conclude that the English language requirement tends to screen out deaf applicants and is thus impermissible as a matter of law. Moreover, to the extent Plaintiff is focusing his challenge on the English language requirement

---

[4] In their briefing, the parties mention the NYSHRL and NYCHRL only in passing, and at no point does either party suggest that, with respect to any particular issue, an application of either the State or City law should result in a different outcome than that dictated by federal law. The Court has nonetheless considered this question, and, upon its review of the record, it concludes that the analysis set forth herein would be applicable under each of the relevant statutes.

for the job, this case is distinguishable from cases cited by Plaintiff – mostly from outside this Circuit – where employers imposed a *hearing* requirement, which plainly screened out deaf applicants or candidates.  (*See id.*, at 11-14.)

In any event, Plaintiff himself notes that an employer may impose requirements that tend to screen out disabled applicants, where the requirement is mandated by, or derived from, government regulations.  (*Id.,* at 11.)  Plaintiff does not dispute that NYCTA's hiring requirements are subject to, *inter alia,* the rules and regulations of DCAS (Pl. Resp. to Def. 56.1 ¶ 11), nor does he dispute that DCAS rules and regulations mandate that candidates for the Assistant Stockworker position understand and be understood in English (*id.* ¶ 14; *see also* Palencia Decl., Ex. J).  The Court therefore finds unpersuasive Plaintiff's claim that NYCTA's implementation of the DCAS language requirements is, on its face, a violation of the Rehab Act, the NYSHRL, or the NYCHRL.

**B.      Defendant Is Entitled To Summary Judgment Dismissing
Plaintiff's Claims That the Denial of an ASL Interpreter For His
<u>Written Examination Constituted Unlawful Employment Discrimination.</u>**

Second, the Court turns to Defendant's principal argument for summary judgment in its favor – *i.e.*, that, regardless of how the written examination was conducted, Plaintiff, based on the nature of his past work experience, was not qualified for the Assistant Stockworker position, and therefore cannot make out a *prima facie* case of disability discrimination.  Plaintiff, for his part, asserts that he was qualified based on his experience as a locksmith (Pl. Mem., at 17-20), and that, in any event, he was undisputedly qualified to take the *exam* and was therefore entitled to a reasonable accommodation for the exam itself (*id.,* at 15-17).  For the reasons discussed below, this Court concludes that, because Plaintiff has not come forward with evidence capable

of creating a genuine dispute as to whether he was qualified for the *job* for which he was

applying, summary judgment in Defendant's favor is warranted.

> **1.     To Make Out a *Prima Facie* Case of Employment
> Discrimination, Plaintiff Must Be Able To Show
> That He Was Qualified For the Position He Sought.**

As a preliminary matter, Plaintiff asserts in his briefing that the question of whether he

was qualified for the Assistant Stockworker position is irrelevant, and that the "key issue" is

instead whether he was qualified to take the exam.  (Pl. Mem., at 15; Pl. Reply, at 2-4.)  The

Court finds this argument unpersuasive.

It is well-settled and uncontroversial law that a plaintiff asserting a disability

discrimination claim in the employment context must be able to demonstrate – as part of a *prima*

*facie* case – that he or she was qualified for the position at issue.  Indeed, courts routinely dismiss

such claims at the summary judgment stage where plaintiffs fail to come forward with evidence

to support this necessary element.  *See, e.g.*, *Snowden v. Trustees of Columbia Univ.*, 612 F.

App'x 7, 10 (2d Cir. 2015) (affirming grant of summary judgment under the ADA, NYSHRL,

and NYCHRL where there was no dispute that plaintiff was not "otherwise qualified to perform

the essential functions of her job"); *Falso v. SPG Direct*, 353 F. App'x 662, 664 (2d Cir. 2009)

(affirming grant of summary judgment where plaintiff "failed to provide any evidence that he

was otherwise qualified to perform the essential functions of his job with or without reasonable

accommodation"); *Shannon v. New York City Transit Auth.*, 332 F.3d 95, 100-04 (2d Cir. 2003)

(affirming grant of summary judgment under the ADA, NYSHRL, and NYCHRL where

undisputed record established plaintiff did not meet the requirements for the position); *Dooley v.*

*JetBlue Airways Corp.,* No. 14cv4432 (JMF), 2017 WL 3738721, at *3 (S.D.N.Y. Aug. 29,

2017) (granting summary judgment where "[b]ased on [plaintiff's] own admissions, . . . [she]

cannot establish that she is 'otherwise qualified to perform the essential functions of the job'"

(citation omitted)), *aff'd*, 751 F. App'x 52 (2d Cir. 2018); *Nadel v. Shinseki*, 57 F. Supp. 3d 288,

298 (S.D.N.Y. 2014) (granting summary judgment where, *inter alia*, plaintiff failed to establish

the existence of a dispute of material fact as to whether he was qualified for his position);

*Krasner v. City of New York*, No. 11cv2048 (PGG), 2013 WL 5338558, at \*12 (S.D.N.Y.

Sept. 23, 2013) (same), *aff'd*, 580 F. App'x 1 (2d Cir. 2014).

The cases cited by Plaintiff in support of his argument that he was entitled to an

accommodation for the exam regardless of whether he was qualified for the position (Pl. Reply,

at 2), are not only from outside this Circuit and thus not controlling, but, in any event, do not

support Plaintiff's argument.  In *Rosebrough v. Buckeye Valley High Sch.*, 690 F.3d 427, 431

(6th Cir. 2012), the Sixth Circuit held that the supposed "requirement" that plaintiff hold a

commercial driver's license was not actually a requirement for the position she held, and the

parties did not dispute that she was "otherwise qualified" for the position, *see id.,* at

431-33.  In *Stutts v. Freeman*, 694 F.2d 666, 668 (11th Cir. 1983), the Eleventh Circuit found

that the defendant employer was required to make accommodations on a written test for a

candidate with dyslexia where the record contained "considerable evidence supporting

[plaintiff's] contention that he [was] fully capable of performing well" at the position in

question, *id.*  Finally, in *E.E.O.C. v. Creative Networks, L.L.C.*, 912 F. Supp. 2d 828, 837

(D. Ariz. 2012), there was no dispute between the parties that the plaintiff whose administrative

complaint led to a lawsuit by the E.E.O.C. was qualified for the position in question, *see id.*

In short, none of the authority cited by Plaintiff suggests that, under the Rehab Act or

analogous statutes, a candidate for employment may successfully challenge the employer's

failure to provide reasonable accommodations in connection with a pre-employment screening

test, without first being able to demonstrate the necessary element of a *prima facie* case that he or

she was otherwise qualified for the position sought.[5]  Rather, the Court finds that, in order to survive summary judgment here, Plaintiff must at least demonstrate a genuine issue of fact as to whether he was qualified for the Assistant Stockworker position.

> **2.**    **Plaintiff Has Failed To Come Forward With Evidence Capable of Demonstrating That He Was Qualified For the Assistant Stockworker Position.**

Defendant contends that, based on the evidence developed in discovery, Plaintiff was not, in fact, qualified for the Assistant Stockworker position, and therefore cannot satisfy this required element of his *prima facie* case.  The Court agrees.

In considering whether a plaintiff can show that he or she was otherwise qualified for the position sought, "a court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position." *Shannon*, 332 F.3d at 100 (alteration and citation omitted).  It is also appropriate, and indeed necessary, for a court to consider "an employer's description of a job's essential functions." *Id.,* at 101.  In this case, as discussed above, the position at issue was determined by the employer to require either three years of full-time experience as a stock assistant, stock clerk, or stock worker in certain types of settings, or two years of such experience together with a four-year high school diploma or its equivalent, or "a satisfactory equivalent of education and experience."  (Def. 56.1 Stmt. ¶ 21; Palencia Decl. Ex. D, at MTA BUS 000004.)  As the parties do not dispute that Plaintiff did not have any previous "full-time experience as a stock assistant, stock clerk, or stock worker," the

---

[5] Although, under the NYCHRL, the burden would be on the employer to demonstrate that Plaintiff was not qualified to perform the essential functions of the position, the result is the same where, as discussed *infra,* there is no genuine dispute that Plaintiff was not qualified. *Snowden,* 612 F. App'x at 10.

relevant question for purposes of the parties' motions is whether there is a genuine dispute that Plaintiff had a "satisfactory equivalent of education and experience."

In support of their contention that Plaintiff lacked the type of experience that could have been considered sufficient to qualify him for the Assistant Stockworker position, Defendant proffers deposition testimony from its Rule 30(b)(6) witness, Michael Quiery ("Quiery"), NYCTA's Senior Director of Personnel, Testing, Selection, and Classification.  In particular, Defendant cites Quiery's testimony that, upon his review of Plaintiff's application, he found that Plaintiff "d[id] not appear . . . [to] meet[] the minimum qualifications for the position," and that equivalent experience "would have to be stock work experience."  (*See* Def. 56.1 Stmt. ¶ 21; Palencia Decl., Ex. K, at 35-36, 49-50.)  Defendant also highlights the fact that, when questioned at his own deposition, Plaintiff himself admitted that, based on his understanding of the job posting (as translated to him by his friend), he did not believe he qualified for the position (*see* Def. Mem., at 7-8 (citing Pl. Dep., at 23-25)), and that he instead applied to get his "foot in the door," hoping that he would be able to later secure a locksmithing position (*id.*).

In response, Plaintiff argues – without any citation to evidence – that the tasks of the Assistant Stockworker position are "mundane" (Pl. Mem., at 18), and that a reasonable jury could therefore conclude that Plaintiff's locksmithing experience was equivalent.  Plaintiff points to no evidence capable of showing that work that Plaintiff previously performed as a locksmith was actually "equivalent" to the work performed by a "stock assistant, stock clerk, or stock worker in an industrial, manufacturing, or wholesaling business which stocks railroad, automotive, machine, aircraft or marine maintenance tools, production parts, or plumbing, hardware or sheet metal supplies and tools" (Palencia Decl., Ex. D, at MTA BUS 000004), such that the nature of Plaintiff's work experience could have rendered him "otherwise qualified" for

the Assistant Stockworker position.  Even if the Court were to accept Plaintiff's characterization

of certain tasks performed in the position as "mundane," it does not necessarily follow that an

individual who lacked any experience performing those tasks would be qualified to perform

them, much less to perform the position in its entirety.  Moreover, Defendant's job description as

set forth in the Notice of Examination explicitly notes that even certain types of stock-worker

experience, such as experience as a retail stock worker, would not be a "satisfactory equivalent,"

making it highly unlikely that prior positions that involved no stock work at all (like

locksmithing) could be considered a "satisfactory equivalent."  (Palencia Decl. Ex. D, at MTA

BUS 000004.)  While, at this stage, Plaintiff is not required to establish that Plaintiff's

experience would, in fact, be equivalent, Plaintiff "must do more than simply show that there is

some metaphysical doubt as to the material facts" to defeat summary judgment.  *Nadel*, 57 F.

Supp. 3d at 294 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586

(1986)).  Plaintiff's counsel's conclusory assertions of possible equivalence do not meet this

burden.

As Plaintiff has not demonstrated a genuine issue of fact as to whether he was qualified

for the Assistant Stockworker position, Plaintiff has failed to show that he can meet his

*prima facie* burden, and summary judgment for Defendant on Plaintiff's disparate-treatment

claims – under the Rehab Act, the NYSHRL, and the NYCHRL – is therefore appropriate.[6]

### C. Plaintiff's Claim of Disparate Impact Is Untimely and, in Any Event, Is Unsupported by the Record.

Finally, Plaintiff argues that Defendant's policy of not providing ASL interpreters as an

accommodation to any examinee has a "disparate impact" on deaf and hard-of-hearing

individuals.  (Pl. Mem., at 29-30.)  Defendant argues, in response, that the "disparate impact"

theory of liability was not pleaded in Plaintiff's Amended Complaint, and thus cannot be

advanced at this late stage.  (Def. Reply, at 6-7.)  The Court agrees that Plaintiff's failure to raise

a disparate-impact claim in his Amended Complaint precludes him from raising such a claim on

summary judgment.  Moreover, even if the Court were to read a disparate-impact claim into the

Amended Complaint (or permit a belated amendment of Plaintiff's pleading to allow such a

claim), Defendant would be entitled – based on the discovery record before the Court – to

summary judgment in its favor on that claim.

---

[6] For these same reasons, Plaintiff's assertion at this stage that Defendant failed to engage in the interactive process (a claim not explicitly raised in the Complaint) cannot save Plaintiff's claim.  *See, e.g., McBride,* 583 F.3d at 102 ("[R]efusal to engage in the interactive process contemplated by the ADA . . . [i]s merely one element of a *prima facie* case for a claim [for failure to engage in the interactive process] under the ADA . . . [and] an ADA plaintiff is independently required to make a showing that she is, at least with reasonable accommodation, qualified for [the] position" (discussing *Parker v. Columbia Pictures Industries,* 204 F.3d 326 (2d Cir. 2000)); *Theilig v. United Tech Corp.,* 415 F. App'x 331, 333 (2d Cir. 2011) ("because [plaintiff] has not stated a prima facie accommodation claim, [defendant] was not obliged to engage in an interactive process" (internal quotations omitted)); *Reyes v. Krasdale Foods, Inc.,* 945 F. Supp. 2d 486, 493 n.7 (S.D.N.Y. 2013) ("Because the Court finds plaintiff has not established a *prima facie* case of discrimination under the ADA, it need not discuss the sufficiency of the interactive process." (citing *McBride*)).

First, "[a]s a general matter, . . . a party may not use his or her opposition to a dispositive motion as a means to amend the complaint." *Stratton v. Ernst & Young, LLP*, No. 15cv1047 (VEC), 2016 WL 6310772, at *6 (S.D.N.Y. Oct. 27, 2016) (citing *Shah v. Helen Hayes Hosp.*, 252 Fed. App'x 364, 366 (2d Cir. 2007)) (internal quotations and alterations omitted).  In this case, Plaintiff argues that Defendant should have been on notice that he intended to pursue a "disparate impact" claim because, in the Amended Complaint, he alleged that Defendant had a policy of administering all exams in English.  (*See* Pl. Reply, at 8 (citing Am. Compl. ¶ 19).) Plaintiff, however, cites no support for his argument that this bare reference to a "policy" – without any other allegations related to disparate impact – can be found sufficient to have pleaded a disparate-impact claim or to have placed Defendant on fair notice that such a claim was impliedly being asserted, and the Court finds this argument weak, at best.  Equally unconvincing are Plaintiff's only other contentions on this point – that Defendant "cannot now 'claim surprise'" with respect to a purported disparate-impact claim because its Rule 30(b)(6) deposition witness in this case, Quiery, was deposed not only in connection with this case, but also in the *Frilando* case (which, as noted above, involves another deaf applicant who was not provided with an ASL interpreter for a DCAS exam), and because "each of Defendant's witnesses was questioned regarding the provision of reasonable accommodations to all deaf and hard of hearing test takers."  (Pl. Reply, at 8.)  Any questioning of Quiery that may have taken place during discovery in *Frilando* is irrelevant to the contents of Plaintiff's pleading in this case. Although Plaintiff apparently views *Frilando* as a companion case to this one, it involves a different plaintiff, names a different defendant (the MTA, as opposed to its subsidiary, MTA Bus Company), has not been designated as "related" to this case, and is pending before a different judge.  Moreover, deposition questions posed to witnesses in this case regarding Defendant's

policies for testing and requests for ASL accommodations would have been relevant to understanding the context of Plaintiff's disparate-treatment claim and Defendant's potential defenses to that claim, and thus such questioning alone would not necessarily have placed Defendant on notice of a disparate-impact claim not alleged in the Amended Complaint.

Overall, the Court views Plaintiff's argument regarding its supposed disparate-impact claim as an untimely attempt to amend the Amended Complaint, and that argument is therefore rejected. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003) (affirming finding of district court and circuit court that, where disparate impact claim was raised for the first time at summary judgment, "respondent did not timely pursue a disparate-impact claim . . . [and] was limited to a disparate-treatment theory"); *Stratton,* 2016 WL 6310772, at *6 (where Plaintiff raised disparate-impact claim for the first time at the summary judgment stage, "the Court would be well within its discretion to reject this argument entirely because it was raised too late"); *see also Hurban v. United Health Servs. Hosps., Inc.,* No. 3:16cv552 (NAM) (DEP), 2018 WL 1069176, at *12 (N.D.N.Y. Feb. 23, 2018) (Plaintiff's [disparate impact] claim may not be raised for the first time in opposition to summary judgment.").

Second, even if the Court were to allow Plaintiff to proceed with a disparate-impact claim, he would not be able to prevail on that claim.  "In order to establish a *prima facie* case of disparate impact, the plaintiff must provide evidence showing (1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices."  *Hurban,* 2018 WL 1069176, at *12 (citing *Quad Enterprises Co., LLC v. Town of Southold*, 369 Fed. App'x 202, 205-06 (2d Cir. 2010)).  While Plaintiff asserts, in conclusory fashion, that Defendant's policy "has a disparate impact on deaf and hard-of-hearing applications" (Pl. Mem., at 29),

Plaintiff does not actually point to any evidence in the record to support this contention, and the Court has identified none.  *See Stratton,* 2016 WL 6310772, at *6 (rejecting disparate impact claim at summary judgment stage where sole evidence of disparate impact was flawed statistical analysis); *Hurban,* 2018 WL 1069176, at *12 ("Plaintiff has not adduced any evidence to show this disparate impact.  For example, there is no statistical evidence . . .").[7]  Certainly, pointing to the existence of the claims made by one other plaintiff, in *Frilando* (*see* Pl. Mem., at 30) (against a different employer, no less), is not tantamount to presenting evidence to demonstrate a "*significantly adverse or disproportionate*" impact of *Defendant's* policy on deaf or hard-of-hearing individuals, *see Hurban,* 2018 WL 1069176, at *12.

Accordingly, to the extent Plaintiff has raised a claim of disparate-impact discrimination, Defendant is granted summary judgment dismissing that claim.  Alternatively, to the extent Plaintiff seeks leave to amend his pleading to add a disparate-impact claim, leave to amend is denied.

---

[7] While Plaintiff cites to a transcript on the Docket of *Fair Housing Justice Ctr., Inc. v. Catholic Managed Long Term Care, Inc.,* 15cv8677 (PAE) (S.D.N.Y.), in which the Honorable Paul A. Engelmayer, U.S.D.J., issued an oral order denying a motion to dismiss, *see id.* at Dkt. 103, that decision is largely inapposite.  The language quoted by Plaintiff (*see* Pl. Mem., at 29-30) related not to a disparate-impact claim, but rather to a claim of failure to accommodate, and, regardless, Judge Engelmayer's ruling was made at the pleading stage, not on summary judgment.  Even assuming, *arguendo,* that allegations that a policy denies access to deaf individuals can be sufficient to state a disparate-impact claim (and thus sufficient to survive a motion to dismiss), it is Plaintiff's burden, at the summary judgment stage, to proffer some evidence of disparate impact.  *See Stratton,* 2016 WL 6310772, at *6-7 ("If Plaintiff really wanted to pursue this theory of liability, it was his burden to adduce evidence to create a genuine question of fact regarding disparate impact.").

## <u>CONCLUSION</u>

For all the foregoing reasons, Defendant's motion for summary judgment (Dkt. 48) is

granted, and Plaintiff's cross-motion for summary judgment (Dkt. 44) is denied.  The Clerk of

Court is directed to close this case on the Court's docket.

Dated:  New York, New York
       April 20, 2020

                          SO ORDERED

                          DEBRA FREEMAN
                          United States Magistrate Judge

<u>Copies to</u>:

All counsel (via ECF)